FILED
04/01/2024
Terry Halpin
CLERK
Yellowstone County District Court
STATE OF MONTANA
By: Ronda Duncan
DV-56-2024-0000366-BF
Davies, Colette B.
1.00

Matthew I. Tourtlotte
Andrew J. Miller
MILLER TOURTLOTTE LAW, PLLC
1643 24th Street West, Suite 308
Billings, MT 59102
Tel:    (406) 294-3400
Fax:    (406) 545-7995
matt@mtlawgroup.com
amiller@mtlawgroup.com

*Attorneys for Plaintiff Linda Booth Individually and as Personal Representative of the Estate of William Booth*

**MONTANA THIRTEENTH JUDICIAL DISTRICT COURT,
YELLOWSTONE COUNTY**

| | |
|---|---|
| LINDA BOOTH, individually and as the PERSONAL REPRESENTATIVE OF THE ESTATE OF WILLIAM BOOTH,<br><br>Plaintiff,<br><br>-vs.-<br><br>FORESTER'S FINANCIAL SERVICES, INC. a/k/a THE INDEPENDENT ORDER OF FORESTERS; and JOHN DOES A-Z.<br><br>Defendants. | Cause No. DV-56-2024-0000366-BF<br><br>Judge: Colette B. Davies<br><br>**PLAINTIFF'S COMPLAINT AND DEMAND FOR JURY TRIAL** |

COMES NOW Plaintiff, Linda Booth, individually and as the Personal Representative of the Estate of William Booth, by and through her counsel of record and submits the following allegations and demand for a jury trial in support of Plaintiffs' Complaint and Demand for Jury Trial against the above-named Defendants:

////

////

## JURISDICTION & VENUE

1. The Plaintiff Linda Booth ("Plaintiff") is the duly appointed personal representative of the Estate of William Booth, deceased. Plaintiff was at all times relevant hereto a resident of the State of Montana and resided in Yellowstone County.

2. Defendant Foresters Financial Services, Inc. and the Independent Order of Foresters (collectively "Foresters") are foreign insurers engaged in the authorized business of selling life insurance policies and other insurance products within the State of Montana.

3. The application for the Foresters life insurance policy was sold to William Booth and filled out by Mr. Booth in the state of Montana.

4. The Foresters life insurance policy, sold to William Booth by Defendants, was issued on September 10, 2021, and was asserted to be governed by the State of Montana.

5. The remaining John Doe Defendants are other insurance/business entities, producers, or adjusters, carrying on the business of Foresters and are engaged in the business of selling, administering, and/or adjusting life insurance policies within the State of Montana.

6. All the benefits available to the Plaintiff under the Foresters life insurance policy at issue were to be administered to the Plaintiff in the state of Montana.

7. Based upon the above facts, the State of Montana has jurisdiction over the claims set forth here and the venue is proper in Yellowstone County, Montana.

## FACTS COMMON TO ALL COUNTS

8. On September 2, 2021, William Booth was provided an application for life insurance (application) for a Foresters life insurance policy.

////

////

9. While filling out the application, William Booth disclosed several serious health conditions, as requested by the Defendants in their policy application, including that he had, within the past 10 years, been diagnosed with, or received treatment or medication, tested positive or been given medical advice for:

    a. Diabetes, high blood pressure, a disease or disorder of the blood or lymphatic system, coronary artery disease, heart murmur, chest pain, irregular heartbeat, aneurysm, stroke, transient ischemic attack, congestive heart failure (CHF), a disease or disorder of the arteries or valves, peripheral vascular or arterial disease (PVD or PAD), or had a heart attack, heart surgery, heart procedure or circulatory surgery.

    b. And, Anxiety, depression, manic depression, bi-polar disorder, schizophrenia or a mental health disorder.

10. William Booth further disclosed on the application that he was taking prescription medications for an enlarged prostate; that he had underwent an MRI in 2020; that he had suffered a torn rotator cuff in 2020.

11. William Booth further disclosed that he had been diagnosed with high blood pressure and that he was prescribed medication to control high blood pressure.

12. William Booth further disclosed that he was diagnosed with anxiety and depression and that he was prescribed medication to regulate his anxiety and depression symptoms.

13. Defendants did not ask William Booth to fill out 'Part 2: Additional Medical Questions' for the Forester life insurance application.

14. William Booth completed the application presented to him by Defendants in a manner that was truthful and complete to the best of his knowledge.

15. Defendants did not offer any additional instructions on how to fill out the medical questionnaire on the Forester application.

16. On September 10, 2021, Defendants, through their joint efforts, issued a "Foresters SMART Universal Life" ("Policy") insurance policy to William Booth.

17. The Policy included a Certificate Number of "9232846" and indicated that the governing state was "Montana".

18. The Policy issued by Defendants to William Booth included a face amount of $100,000.00.

19. The Policy issued by Defendants to William Booth included a maximum lifetime acceleration amount of $500,000.00.

20. The Policy issued by Defendants to William Booth included a common carrier accidental death rider in the amount of $300,000.00.

21. The Policy issued by Defendants to William Booth included a maximum family benefit in the amount of $5,000.00.

22. The Policy issued by Defendants to William Booth declared that it would pay death benefits to the beneficiaries of William Booth when Foresters received "due proof of the insured's death" and subject to the terms and conditions of the policy.

23. William Booth was injured in the course and scope of his employment as a package handler for Matheson Flight Extenders on February 23, 2022, when he slipped on ice and hit his head. He was diagnosed with subdural hematomas in his brain and underwent a decompressive craniotomy.

24. William Booth spent several weeks in the ICU after suffering the February 23, 2022. He died from complications attributed to the head injury on April 6, 2022.

25. William Booth's Estate made a claim for life insurance benefits and other benefits under the Policy shortly after his death.

26.     Defendant, Foresters, denied all benefits under the Policy on October 4, 2022, citing that William Booth was untruthful regarding his disclosure of pre-application medical conditions.

27.     Defendant, Foresters, denied all benefits under the Policy, asserting that William Booth had failed to disclose "within the past 10 years" attendant to his application that he had failed to check "yes" regarding the following questions at paragraph 15 (b) and (f):

> The Application includes the following questions:
>
> "15. Within the past 10 years, have you been diagnosed with, or received treatment or medication, tested positive or been given medical advice for:
>
> ...
>
> b) Cancer (excluding skin cancer that is basal cell carcinoma), tumor, gastrointestinal bleeding, unexplained weight loss, or a disease or disorder of the pancreas or endocrine system?
>
> ...
>
> f) Blood in the urine, hepatitis, Crohn's disease, Systemic Lupus, cirrhosis, or a disease or disorder of the liver, prostate, bladder, kidney, genito-urinary organs, connective tissue or the digestive or immune system (other than HIV)?"

28.     Defendant, Foresters, denied all benefits under the Policy citing that William Booth had a history of hypopituitarism and hypogonadism.

29.     Defendant, Foresters, denied all benefits under the Policy and instead, purported to rescind the contract and return the premiums William Booth had paid on the grounds that William Booth did not qualify for the coverage because he had failed to disclose he had been diagnosed or received treatment for "*cancer (excluding skin cancer that is basal cell carcinoma), tumor, gastrointestinal bleeding, unexplained weight loss, or a disease or disorder of the pancreas or endocrine system*" and/or that he had been diagnosed or treated for "*blood in the urine, hepatitis, Crohn's disease, Systemic Lupus, cirrhosis, or a disease or disorder of the liver, prostate, bladder,*

*kidney, genito-urinary organs, connective tissue or the digestive or immune system (other than HIV).*"

30. In purporting to rescind the Policy, Defendant, Foresters, asserted that William Booth had made a material misrepresentation on his application, stating:

> a. "We found that these conditions were present during the time period stated on the questions and should have been disclosed at the time the application was completed. Foresters relied on William Booth's responses on the Application when it accepted the completed application and subsequently issued the certificate. The information sought by the questions in the Application was material to our decision to issue the certificate."
>
> b. "For the reasons stated above we are rescinding the certificate issued on the life of William Booth, certificate number 9232846. As a result, no death benefit is payable under this certificate."

31. In purporting to rescind the Policy, Defendant, Foresters, sought to return the premiums paid by William Booth in the amount of $4,250.00.

32. William Booth did not die from '*cancer, tumor, gastrointestinal bleeding, unexplained weight loss, or a disease or disorder of the pancreas or endocrine system*'.

33. William Booth did not die from any disease or illness related to "*blood in the urine, hepatitis, Crohn's disease, Systemic Lupus, cirrhosis, or a disease or disorder of the liver, prostate, bladder, kidney, genito-urinary organs, connective tissue or the digestive or immune system (other than HIV).*"

34. William Booth did not die from hypopituitarism and hypogonadism.

35. Defendant, Foresters, engaged in post-claim underwriting, looking for a reason to deny the William Booth Estate's claim for life insurance benefits under the Policy, which was sold to him, which he paid premiums under, and which was in force at the time of William Booth's death.

36. Defendant Foresters' denial of benefits to Mr. Booth's Estate was wrongful, in violation of the contract itself and Montana law governing insurance and business practices.

37. The Plaintiff, Linda Booth, was individually damaged by Defendant Foresters' refusal to issue benefits payable under the Policy. She has suffered frustration, anger, anxiety, embarrassment, and humiliation because of Defendant Foresters' wrongful denial of the claim.

38. Upon information and belief, Foresters pays benefits only a fraction of the time when claims for life insurance benefits under its policies are made within the "contestable period." In other words, Foresters sells life insurance policies but, when the person dies and benefits become due, it pays such claims only a fraction of the time and instead refuses to pay claims under specious grounds such as those presented here. Upon information and belief, Foresters' denial of life benefits to William Booth's Estate is part of a standard business practice.

## **COUNT ONE – DECLARTORY RELIEF**

39. The above allegations are hereby incorporated in Count One of this Complaint as though expressly set forth.

40. This Complaint seeks declaratory relief pursuant to Sec. 27-8-201, et seq. M.C.A., because an actual controversy exists and Plaintiff needs this Court's declaration of her rights, status and legal relations with respect to Defendant, Foresters, pursuant to the insurance the Policy.

41. Defendant, Foresters, has unlawfully refused to pay life insurance benefits due to Plaintiff, has unlawfully refused to pay life insurance benefits due to Plaintiff, both individually, and as Personal Representative of the Estate of James Dabney, without initiating any court action seeking a declaration of its rights and obligations with respect to Plaintiff under the Policy.

////

////

## COUNT TWO – BREACH OF CONTRACT

42. The above allegations are hereby incorporated in Count Two of this Complaint as though expressly set forth.

43. Defendant, Foresters, has wrongfully refused to pay life insurance benefits due to Plaintiff, both individually, and as Personal Representative of the Estate, causing Plaintiff detriment in an amount to be established at trial, including consequential and incidental harm and loss, attorney fees, costs and prejudgment interest.

## COUNT THREE – UNFAIR TRADE PRACTICES

44. The above allegations are hereby incorporated in Count Three of this Complaint as though expressly set forth.

45. At all times relevant to this Complaint, Foresters had the duty to understand and apply the terms of its insurance policies in accordance with, and as required by, well established principles applicable to the insurance industry. Specifically, Foresters knew it must pay policy benefits in accordance with the plain language and requirements of its insurance policies.

46. Foresters also had the duty to handle claims arising under its life insurance policies in accordance with standards applicable to the insurance industry and made mandatory by Montana's Unfair Trade Practices Act, Section 33-18-201, M.C.A. pursuant to which it is unlawful and a prohibited practice to: (1) misrepresent pertinent facts or insurance policy provisions relating to coverages at issue; (2) fail to acknowledge and act reasonably promptly upon communications with respect to claims arising under insurance policies; (4) refuse to pay claims without conducting a reasonable investigation based upon all available information;(6) neglect to attempt in good faith to effectuate prompt, fair, and equitable settlements of claims in which liability has become reasonably clear; (7) compel insureds to institute litigation to recover amounts due under an

insurance policy by offering substantially less than the amounts ultimately recovered in actions brought by the insureds.

47. Foresters has violated subparagraphs (1), (2), (4), (6) and (7) of the Montana Unfair Trade Practices Act, Section 33-18-201, M.C.A. ("MUTPA."), causing Plaintiffs to suffer injury, harm and loss, giving rise to a general tort action in favor of Plaintiffs pursuant to Section 33-18-242, M.C.A.

48. Foresters' actions were and continue to be unlawful, intentional, purposeful, and knowingly calculated to enhance its profit at Plaintiff's expense in conscious disregard of the certainty that Plaintiff would suffer injury as a result. This conduct on the part of Defendant clearly and convincingly demonstrates reprehensible conduct and justifies assessment of punitive damages against Defendant for the harm caused to Plaintiff in accordance with the strict procedural and substantive protections afforded by Montana law.

## **COUNT FOUR – FRAUD**

49. The above allegations are hereby incorporated in Count Three of this Complaint as though expressly set forth.

50. Defendant, Foresters, made several representations of fact that were untrue, including that William Booth was qualified to receive benefits under the Policy; That Mr. Booth made material misrepresentations of fact in his application for life insurance benefits contained material misrepresentations; and that Defendants were legally entitled to rescind the Policy.

51. The representations made by Foresters were false in that William Booth's application did not contain material misrepresentations of his pre-application health status. Foresters also misrepresented that it was legally entitled to rescind the Policy based upon William

Booth's failure to disclose the conditions of hyperthyroidism and hypogonadism. Foresters also misrepresented that it owed no life insurance benefits under the policy.

52. The misrepresentations by Foresters and the rescinding of the Policy were material.

53. Defendant Foresters knew or should have known that it could not rescind the Policy based upon the alleged nondisclosure of hyperthyroidism and hypogonadism.

54. Defendant, Foresters, intended that its false representations would be relied upon by Plaintiff.

55. Plaintiff was not aware of the falsity of Defendants' representations made in the Defendants' coverage denial and recission letter.

56. Plaintiff justifiably relied upon the false representations made by Defendant, Foresters.

57. As Plaintiff relied upon the false representations made by Defendant, Foresters, alleging there was no coverage under the Policy and that the Policy was lawfully rescinded, Plaintiff received no benefits that were owed under the Policy.

58. Plaintiff was forced to hire an attorney and to initiate litigation to obtain life insurance benefits owed under the policy.

59. Plaintiff was embarrassed, angered, and humiliated by Defendant Foresters' assertions that William Booth had made material misrepresentations in his policy application.

60. Plaintiff was financially distressed where Defendant, Foresters, refused to pay benefits owed under the policy.

61. Defendant Foresters' fraud clearly and convincingly demonstrates reprehensible conduct and justifies assessment of punitive damages against Defendant for the harm caused to

Plaintiff in accordance with the strict procedural and substantive protections afforded by Montana law.

WHEREFORE, Plaintiff respectfully prays for Judgment:

1. Declaring Plaintiff's rights under the Foresters insurance policy and requiring Defendant to pay all life insurance benefits due in accordance with the provisions of said policy.

2. Requiring Defendants to pay an amount of money sufficient to make up for the harm Defendants have caused to Plaintiff, including prejudgment interest and emotional distress.

3. Requiring Defendants to pay Plaintiffs attorney fees and costs to the full extent permitted by Montana law.

4. Punitive damages sufficient in amount to punish them for the harm caused to Plaintiff through their wrongful conduct 'and deter similar wrongful acts on the part of Defendants now and forever in the future.

5. For interest and all other relief, the Court may deem just and appropriate under the circumstances.

## DEMAND FOR JURY TRIAL

Plaintiff demands a jury trial on all issues.

DATED this 1st day of April 2024.

                                                    MILLER TOURTLOTTE LAW, PLLC

                                                    By   /s/ Matthew I. Tourtlotte
                                                             Matthew I. Tourtlotte
                                                             Andrew J. Miller
                                                             matt@mtlawgroup.com
                                                             amiller@mtlawgroup.com
                                                             *Attorneys For Plaintiffs*

## CERTIFICATE OF SERVICE

I, Andrew J. Miller, hereby certify that I have served true and accurate copies of the foregoing Complaint - Complaint to the following on 04-01-2024:

Andrew J. Miller (Attorney)
Miller Tourtlotte Law, PLLC
1643 24th Street West, Suite 308
Billings MT 59102
Service Method: eService
E-mail Address: amiller@mtlawgroup.com

Matthew I. Tourtlotte (Attorney)
1643 24TH ST W STE 308
BILLINGS MT 59102
Service Method: eService
E-mail Address: matt@mtlawgroup.com

Electronically signed by Colette Madison on behalf of Andrew J. Miller
Dated: 04-01-2024